HOBBS MFG. CO. v. GOODING et al.

(Circuit Court of Appeals, First Circuit. February 3, 1910.)

No. 835.

1. EQUITY (§ 150*)—PLEADING—MULTIFARIOUSNESS—ANCILLARY BILL.

An ancillary bill in equity intended to serve the purpose of an equitable execution may be broad in scope, and is flexible in character to meet the necessities of the case. Where, in a suit for infringement of a patent against four defendants, joint and several judgments were entered against all of the defendants for profits during a portion of the time, and against two of them only for profits during another portion, an ancillary bill filed by complainant to reach and subject property alleged to have been fraudulently conveyed by one of the defendants against whom both judgments run is not multifarious because it joins as defendants all of the judgment defendants, and also seeks to make available equitable assets of one or more of the others.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 342, 371-379; Dec. Dig. § 150.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. EQUITY (§ 401*)—PLEADING—INSUFFICIENCY OF ALLEGATIONS—POWER TO
   REFER.
   Where a bill in equity in a federal court fails to conform to the standard
   rules of equity pleading, and especially to equity rule 26, in not contain-
   ing specific allegations necessary to limit the scope of the inquiry within
   definite and proper bounds, it is within the general powers of the court,
   when it becomes necessary for its own protection to do so, on its own mo-
   tion to send the bill to a master to be purged of everything found not to
   conform to the rules.
   [Ed. Note.—For other cases, see Equity, Dec. Dig. § 401.*]

Appeal from the Circuit Court of the United States for the District
of Massachusetts.

Suit in equity by the Hobbs Manufacturing Company against
George E. Gooding and others. Complainant appeals from a decree
dismissing an ancillary bill. Reversed.

For opinion below, see (C. C.) 166 Fed. 933. See, also (C. C.) 164
Fed. 91.

Edward S. Beach, for appellant.

Raymond T. Parke, for appellees Gooding and another.

William A. Copeland (William A. Macleod, on the brief), for appel-
lee Dike.

Charles Warren, for appellee John T. Robinson Co.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, Dis-
trict Judge.

PUTNAM, Circuit Judge. This is a bill in equity with reference to
which there were motions to dismiss and demurrers. A careful ex-
amination of the demurrers shows that, so far as this appeal is con-
cerned, they are to be taken simply as general demurrers. The motions
to dismiss were not accepted by the Circuit Court as efficient, and they
do not appear to us to be so. Nevertheless, we have not carefully sifted
out all the questions which they raise, and, if we are mistaken about
them, the judgment which we will enter will prevent any injurious
results therefrom. The bill was dismissed on the demurrers substan-
tially on the single question of multifariousness, and this question is
the particular matter brought to our attention. The other difficulties
which arise on the face of the bill are numerous; and, while we may
discuss some of them, we will ultimately decide only the question of
multifariousness, reserving the rest for the primary consideration of
the Circuit Court.

The history of the litigation, so far as it is necessary to state it, is
as follows: A bill was filed alleging infringements of sundry patents
by the respondents Glazier, Metcalf, Taylor, and Gooding. Two judg-
ments were entered in a single decree for very considerable amounts in
the way of profits, one against Glazier and Metcalf, jointly and sev-
erally, alleging infringements from April, 1893, and one against all
four—that is, Glazier, Metcalf, Taylor, and Gooding—jointly and sev-
erally, alleging infringements from December, 1894. The original bill
was filed on December 2, 1896, and judgment was entered on January
27, 1908. There is some minor confusion of dates which we have no
occasion to reconcile. Execution issued in the original suit. While

the present bill alleges that the execution was returned unsatisfied, the return on the execution, which is in some way made an exhibit, states that the marshal made search for property in Lynn, Salem, and Hyde Park, and was unable to find any. It concludes:

"Therefore I return this execution into court unsatisfied."

The allegations of the bill override the form of return shown by the exhibit until it is properly offered in evidence. We observe on this because this perhaps is not a sufficient return, and the law on this point is technical. It goes so far that the analogy to the statute of limitations, as applied in equity, prevents the commencement of the running of the period of limitation until the formal return by the officer that the execution is unsatisfied has been made. Bowker v. Hill (C. C.) 115 Fed. 528; affirmed in Taylor v. Bowker, 111 U. S. 110, 4 Sup. Ct. 397, 28 L. Ed. 368. Whether the return will be sufficient as it stands when offered in proof, or whether it can be amended so as to be sufficient, if not now sufficient, are matters which are left for primary consideration and action by the Circuit Court.

The bill before us is in substance an equitable execution, ordinarily known as an ancillary bill, intended to obtain satisfaction of the original judgment. It would be wearisome to attempt to point out in detail how far the Supreme Court has gone with regard to ancillary bills; but we will make brief references thereto for the purpose of showing that the bill before us is strictly and properly of that nature, is amenable as such, and is in no sense subject to the strict rules as to parties or to jurisdictional questions applicable to original suits. We make our references without discrimination between equity and law, because the fundamental principles of ancillary proceedings apply equally to both. The most striking illustrations of the reaching out power of the federal courts through the use of ancillary proceedings are found in the scope given by the Supreme Court to suits by receivers, especially in winding up cases and in creditors' bills, and to writs of mandamus when availed of for the purpose of securing payment of judgments by the taxing officers of quasi corporations. The extent of the ancillary powers of the federal courts was never well understood until the leading case of Freeman v. Howe, 24 How. 450, 460, 16 L. Ed. 749, which is now so familiar that we need not develop it, and which is among those cited in White v. Ewing, 159 U. S. 36, 39, 15 Sup. Ct. 1018, 40 L. Ed. 67, with reference to this general topic. The extent and flexibility of these ancillary powers were pointed out in Pullman's Palace Car Co. v. Washburn, decided in this circuit on March 8, 1895, 66 Fed. 790, affirmed by the Circuit Court of Appeals, 76 Fed. 1005, 21 C. C. A. 598. The bill before us is clearly within the principles applicable to ancillary proceedings, of a class to be regarded as flexible in accordance with the varying details necessary to make them efficient under differing circumstances.

We have had at bar a very considerable discussion with reference to the citizenship of the parties to this bill. In a general sense this is a matter of no consequence in an ancillary suit. This was strikingly exhibited in Root v. Woolworth, 150 U. S. 401, 14 Sup. Ct. 136, 37 L. Ed. 1123. While the question of citizenship is of no importance, the

question of residence, or inhabitancy, may be; but this bill for the most part undertakes to apply for the benefit of the complainant specific properties which it is claimed are located within the district of Massachusetts, where all the proceedings have taken place. So far as this is justified, jurisdiction is, of course, in some way maintainable under section 738 of the Revised Statutes, amended, or re-enacted, in section 8 of the Act of March 3, 1875, c. 137, 18 Stat. 472, 473 (U. S. Comp. St. 1901, p. 513), as most lately pointed out in Ingersoll v. Coram, 211 U. S. 335, 29 Sup. Ct. 92, 53 L. Ed. 208. However, so far as such jurisdictional questions may arise, we reserve them also for the primary consideration and determination of the Circuit Court.

Coming, therefore, to the substantial question before us, we take up the relations of Glazier to these proceedings. Without going into details, and without reference to other allegations of insufficient character to which we will come later, the bill seeks to reach certain real estate located in the district of Massachusetts, fully described, which it alleges Glazier has fraudulently conveyed to persons who still hold it for his equitable benefit and who are made parties. In view of the fact that the demurrers we are dealing with are general and to the whole bill, there may be enough here to sustain the bill, so far as they are concerned, even if all the allegations as to the other parties against whom the judgments run were insufficient. We can therefore test the question of mutifariousness by having for that purpose specific regard to Glazier, and to none other of the respondents in the original suit.

As we have shown, Glazier is one of the four parties against whom decree was entered in part, jointly and severally, and also one of the two parties against whom alone decree was entered in part, jointly and severally; so that, so far as he is concerned, one portion of the judgment overlaps the other, and he and his interests, and the remedies against him, permeate every aspect brought to our attention. We are therefore not called on to deal with a condition which might exist, where one part of a judgment might be against two of the original respondents only, and the other part against the other two only, in which event there would be no overlapping. Under such supposed circumstances, no advantage could apparently come from any attempt to enforce that part of the original decree which lay against two of the original respondents, in connection with an attempt to enforce the other part thereof which lay against the other two original respondents; and the refusal of the Circuit Court to attempt the same might well fail of being reviewed by the appellate tribunal. Here, however, so far as Glazier is concerned, we have necessarily an apportioning of all the property which he has fraudulently conveyed in accordance with the terms of the bill, or of the proceeds thereof. The whole of it could not in equity go to that portion of the judgment which ran against two respondents only, or to that portion which ran against all four. Therefore, there must be an apportionment as between these two portions of the judgment. If the decree here were in solido against all four of the original respondents for one and the same amount, it would not be questioned, and could not be questioned, that an ancillary bill of the character before us would not be multifarious although it joined all

four, and although it sought to make available equitable assets of only one, two, or three of them, or several properties fraudulently conveyed by only one, two, or three. This is clear on general equitable principles, because, whatever the form or purpose of an ancillary proceeding having in view securing payment of an original decree, marshaling between all the respondents is an essential element in the view of the Chancellor. Therefore, all the respondents would necessarily be joined in order that the equities of marshaling might be worked out. Story's Equity Pleadings, § 286. Pollard v. Bailey, 20 Wall. 520, 22 L. Ed. 376, and other cases of that class, illustrate the broad necessity of bringing in all respondents for the proper application of the equities of apportionment and marshaling. Here we have, as we have shown, apportionment necessarily preceding the same marshaling on the same principles as though there had been but one decree in solido against all four respondents. Therefore, it follows that, on the mere question of multifariousness, there must be a reversal.

But, as we have already said, the difficulties of this case do not stop there. We have said that the bill apparently states in proper form sufficient matter to establish a remedy so far as concerns Glazier; and therefore, on account of the necessity of apportionment, it is sufficient to require all other original respondents as parties. We have also said that there may be sufficient on these demurrers to sustain the bill; but we must add that we are doubtful whether the bill contains sufficient, properly alleged, to reach any assets said to have been fraudulently conveyed by any respondent other than Glazier. Many allegations are in the alternative without being in such form as to enable the complainant to assert a double aspect. Of course, such allegations are insufficient, and, in some circumstances fatal on general demurrer. Moreover, the bill contains allegations substantially as follows:

"Your orator further avers. on information and belief, that said defendants, George W. Glazier, John C. Metcalf, Eugene H. Taylor, and George E. Gooding. each has large property interests and rights in said Consolidated Box Machine Company, which neither of them intends to apply to the payment of your orator's claim."

Also as follows:

"On information and belief your orator further avers that said John C. Metcalf has large property interests and rights, and is a stockholder, either in his own name or in the names of others for his use and benefit, in and of said John T. Robinson Company."

With reference to these extracts, it may be that the complex allegations of this bill contain particulars which we have overlooked. But there are allegations of this character where there are no particulars stated. These are not only invalid in accordance with the rules of equity pleading, but, if allowed to stand, might involve the court in an amount of investigation as to which no limits or boundaries have been put by the bill, accomplishing in the end no practical result. Therefore, in view of the insufficient allegations of the character to which we have referred, and others insufficient for other reasons, it is necessary that the court should protect itself of its own motion if the parties fail to do so. Some of these matters are mere surplusage, and some are of

a character which are available only on special demurrer, but would unnecessarily open out a field without limits or bounds, as we have said, if allowed to remain in the bill. Therefore, before proceeding with such a bill the Circuit Court should send it to a master to be purged of everything which is found not to conform to the standard rules of equity pleading. Equity rule 27 may not be sufficiently broad to reach this case; but, so long as any bill fails to comply with the standard maxims of pleading to which we have referred, and especially fails to comply with equity rule 26, it is within the general powers of the court, when it becomes necessary for its own protection so to do, to proceed of its own motion in the way we have pointed out. Dewhurst's Rules of the United States Courts (1907) 350, 351; Kelley v. Boettcher, 85 Fed. 55–61, 29 C. C. A. 14, decided by the Circuit Court of Appeals for the Eighth Circuit on February 14, 1898.

One of the respondent corporations, the John T. Robinson Company, filed a motion to dismiss. Its brief does not refer us to any demurrer, and we have not found any in the record. This corporation was organized in Massachusetts, and therefore it is subject to service; and we find nothing in the motion to dismiss which requires our attention. The same corporation also answered, but the record does not bring that before us at the present time. Therefore, we cannot take authoritative cognizance of anything peculiar to the John T. Robinson Company; but, in line with what we have said as to the general frame of the bill, and the duty of the Circuit Court in reference thereto, we call attention to certain allegations supposed to affect this corporation. We may add that we believe there are like conditions of pleadings with reference to other corporations brought in as parties respondent. The bill alleges that Taylor owns one share of its capital stock which stands in his own name. It proceeds further as follows: "That if only one share of the stock of said John T. Robinson Company stands in the name of said Eugene H. Taylor, then there are a large number of other shares of the stock of said company standing in the names of other persons for the use and benefit of said Taylor." The "other persons" are not named.

It is part of the A B C of the law that in equity the title of corporate stocks, standing apparently in the name of an adverse party, cannot be litigated between the complainant and the corporation in question without bringing in the adverse claimant, so that an issue may be properly made. Apparently this rule was disregarded with reference not only to shares of corporation stocks, but to other properties which the bill seeks to reach. From such examination as we have been able to give, it is probable that it may be found that, with the allegations as they stand with reference to the John T. Robinson Company, the bill should be dismissed as to it, and that other parties may go out for the same reason. However, we leave this also primarily for the Circuit Court.

With reference to the real estate alleged to have been fraudulently conveyed, one or more of the respondents rely on the first section of chapter 178 of the Revised Laws of Massachusetts, to the effect that creditors may bring an action at common law for the possession of the lands of debtors fraudulently conveyed. This, of course, does not affect proceedings in the federal courts, and does not drive their suitors

to actions at common law in lieu of bills in equity, which latter not only give a nominal recovery, but clear the title. Moreover, in this respect, the statutes are not different at all from the common law, regarding the Statutes of Elizabeth as a part thereof; for at common law it has always been a rule that a writ of entry would lie under the circumstances stated. Nevertheless, the equity courts, especially the federal courts, have given a more efficient concurrent remedy of the character attempted in the bill now before us.

Under all the circumstances, the decree appealed against must be reversed, with the understanding that we have ruled conclusively only against the defence of multifariousness, as the record now stands. The Circuit Court is left to initiate and primarily conclude all investigations as to all other topics, the duty resting upon it to purge in some way the pleadings as we have pointed out, or, if the complainant refuses to assist in so doing, to dismiss the bill.

This record is a striking illustration of the necessity of adhering to the standard rules of pleading, and especially to the directions of the twenty-sixth equity rule, that every bill should be expressed in as brief and succinct terms as it reasonably can be; and it is an especially striking illustration of the fact that loose pleadings may involve the court in an unlimited mass of investigations which may in the end prove entirely worthless. Not only do we look to the proponent of this bill, but we look also to the respondents for seasonable objections by exceptions and otherwise with reference to the state of its allegations. The failure of each in these particulars has already thrown so much unnecessary labor on the court that neither is entitled to any costs at the present time.

The decree of the Circuit Court is reversed; the case is remanded to that court for proceedings in accordance with the opinion of this court passed down on the 3d day of February, 1910; and neither party will recover any costs accruing before the filing in the Circuit Court of the mandate conforming to this judgment, either in that court or on this appeal.