**EMPIRE LIGHTING FIXTURE CO., Inc., v. PRACTICAL LIGHTING FIXTURE CO., Inc., et al.**

Circuit Court of Appeals, Second Circuit.
June 16, 1927.

No. 331.

1. **Courts ☞264(2)—District Court had ancillary jurisdiction of bill to set aside fraudulent conveyance, made to defeat collection of judgment in patent infringement suit, regardless of diversity of citizenship.**

Bill to set aside a fraudulent conveyance, made to defeat collection of judgment in patent infringement suit, is within ancillary jurisdiction of District Court, regardless of diversity of citizenship between parties.

2. **Fraudulent conveyances ☞227—Suit to set aside fraudulent conveyance is not essential in New York, such conveyance being void.**

Suit to set aside fraudulent conveyance is not essential in New York, but is only an alternative remedy, since under New York statute such conveyance is void, and may be disregarded, even by creditor whose judgment is entered afterwards.

3. **Fraudulent conveyances ☞241(2)—Simple creditor ordinarily must secure judgment before filing bill to set aside fraudulent conveyance.**

Ordinarily, when a simple creditor has no lien on assets pursued, he must press his claim to judgment before filing bill to set aside a fraudulent conveyance.

4. **Time ☞11—Law will not notice parts of day without sufficient reason.**

The law will not, without sufficient reason, notice parts of a day.

5. **Fraudulent conveyances ☞241(5)—Generally plaintiff, suing to set aside fraudulent conveyance, must show return nulla bona on judgment.**

Generally plaintiff, in suit to set aside fraudulent conveyance, must show that there is a return nulla bona on judgment before bill was filed, unless the point be waived.

6. **Courts ☞335(1)—Federal courts are not bound by state practice relative to requiring return nulla bona on judgment before suing to set aside fraudulent conveyance.**

Requirement that plaintiff in suit to set aside fraudulent conveyance must show return nulla bona on judgment, being part of procedure in equity, federal courts are not bound by state practice.

7. **Fraudulent conveyances ☞241(5)—It will not be held condition precedent to suit to set aside fraudulent conveyance that there be return nulla bona, where all debtor's property subject to writ was conveyed.**

Where it appeared that all debtor's property which could be reached by writ had already been conveyed, it will not be held necessary, as condition precedent to maintaining suit to set aside fraudulent conveyance, that there should be execution and return nulla bona.

8. **Fraudulent conveyances ☞9—If intent to hinder and delay creditors exists, it is of no moment that grantor be solvent.**

Intent to delay and hinder creditors is as much within statute forbidding fraudulent conveyances as an intent to defraud them, and, if it exist, it is of no moment that grantor be solvent.

9. **Fraudulent conveyances ☞159(1)—No consideration will support conveyance known to grantee to be fraudulent.**

No consideration will support a conveyance known to the grantee to be fraudulent.

**10. Courts ⊕⟶366(1)—Federal court is bound by state doctrine construing local statute.**

Federal court is bound by state doctrine construing a substantive provision of a local statute.

**11. Fraudulent conveyances ⊕⟶183(1)—Fraudulent grantor cannot create priorities by exacting promise from grantee to pay some of creditors.**

Fraudulent grantor cannot create priorities between his creditors by exacting from fraudulent grantee a promise to pay some of them.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by the Empire Lighting Fixture Company, Inc., against the Practical Lighting Fixture Company, Inc., the Perfect Lighting Fixture Company, Inc., and another. Judgment for plaintiff, and defendant last named appeals. Affirmed.

Appeal by the Perfect Lighting Fixtures Company, Inc., from a decree of the District Court for the Southern District of New York, which directed judgment against it for the amount of the profits found due to the plaintiff from the Practical Lighting Fixtures Company, Inc., another defendant in the suit.

The suit was filed originally against the Practical Company alone, for the infringement of a design patent. The plaintiff got an interlocutory decree with order of reference, and the master reported the profits of the infringer at about $6,600. The plaintiff thereupon moved to confirm the master's report, and got a final decree against the Practical Company, which was filed on January 5, 1926. On the same day, but whether later or earlier the record did not show, the plaintiff filed a supplemental bill, verified December 28, 1925, alleging that the defendant Aarons was the majority stockholder in the Practical Company, and had directed the infringement; further, that that company had transferred all its accounts receivable to Aarons, and all its plant to the Perfect Company, which was continuing the business at the same place, with Aarons as its president and manager, and that these transfers were made for the purpose of preventing the plaintiff's recovery against the Practical Company; finally, that the two companies were substantially identical, and that the conveyance had left the Practical Company an "empty shell."

The Perfect Company answered, and the issues were referred to another master, who found that the two companies were in substance one, and recommended that a decree should pass against the Perfect Company and Aarons for the amount of the final decree against the Practical. The District Judge refused to confirm the report, in so far as it held the two companies to be one, but thought that the supplemental bill might be treated as designed to set aside the conveyance as in fraud of the plaintiff, and that, so viewed, it had been proved. For this reason he gave a decree against the Perfect Company and Aarons, and the company appealed.

The evidence to support his conclusion was that the Perfect Company, during September, 1925, had bought out all the plant, tools, and inventory of the Practical Company, in consideration of its promise to pay three debts of the grantor equal in amount to the value of the property sold. The allegation that Aarons had taken over the accounts receivable of the Practical Company was not proved, except by the report of a mercantile agency, to the admission of which the defendant objected. There was no evidence, therefore, that the Practical Company had not retained such accounts in sufficient amount to satisfy the final decree against it, or that it was insolvent. It was, however, proved that the Perfect Company had knowledge of the suit, and the inference was also permissible that the transfer was made to prevent the collection of the plaintiff's claim out of the assets transferred.

Albert T. Scharps, of New York City (Morris Kirschstein, of New York City, of counsel), for appellant.

Dodson & Roe, of New York City, for appellee.

Before MANTON and L. HAND, Circuit Judges, and CAMPBELL, District Judge.

L. HAND, Circuit Judge (after stating the facts as above). [1, 2] It is extremely hard to know what the draftsman of the supplemental bill really did intend to allege, but we think that the District Judge was right in concluding that out of it might be spelled enough to support it as a bill to set aside a fraudulent conveyance. As such it was within the ancillary jurisdiction of the District Court, regardless of the fact that there was no diversity of citizenship between the parties. A fraudulent conveyance is void under the New York statute, and may be disregarded, even by a creditor whose judgment is entered afterwards. Chautauque Bank v. Risley, 19 N. Y. 369, 75 Am. Dec. 347; Bergen v. Carman, 79 N. Y. 146; Smith v. Reid, 134 N. Y. 568, 31 N. E. 1082. A suit to set it aside is not therefore essential, but is only an alternative remedy. It clears the title of

the creditor in limine, and is in aid of the principal purpose of the suit; it "is in substance an equitable execution." Dewey v. West Fairmont Gas Coal Co., 123 U. S. 329, 333, 8 S. Ct. 148, 31 L. Ed. 179; Hobbs v. Gooding (C. C.) 164 F. 91; Id., 176 F. 259 (C. C. A. 1). Cook v. Beecher (C. C.) 172 F. 166, affirmed 217 U. S. 497, 30 S. Ct. 601, 54 L. Ed. 855, was quite another case. There the plaintiff tried to hold the directors of a company upon their liability as such for a judgment rendered against it. Such a liability is not an incident to the collection of the judgment itself, but an independent cause of action.

[3, 4] Therefore we come to the merits. When a simple creditor has no lien upon the assets pursued (Case v. Beauregard, 101 U. S. 688, 25 L. Ed. 1004), he must ordinarily press his claim to judgment before filing a bill to set aside a fraudulent conveyance (Smith v. Railroad Co., 99 U. S. 398, 25 L. Ed. 437; Cates v. Allen, 149 U. S. 451, 13 S. Ct. 977, 37 L. Ed. 804; Gillespie v. Riggs, 253 F. 943 [C. C. A. 4]). However, in the case at bar the bill was filed on the same day as the final decree, and it is not possible to tell which preceded the other. If it were, it would still make no difference, since the law will not, without sufficient reason, notice the parts of a day. While the bill should indeed have been amended, the defect was merely a formal one, which we have no difficulty in ignoring; the issue not being open to dispute.

[5, 6] Generally, the plaintiff in such a suit must also show that there was a return nulla bona upon the judgment before bill filed, unless the point be waived. Sage v. Memphis, etc., Co., 125 U. S. 361, 8 S. Ct. 887, 31 L. Ed. 694. This doctrine is absolute in New York, regardless of the insolvency of the judgment debtor (Adsit v. Butler, 87 N. Y. 585; Kraemer v. Williams, 131 App. Div. 236, 115 N. Y. S. 721, affirmed 203 N. Y. 639, 97 N. E. 1107), though it yields, if, for example, because of the debtor's nonresidence, the creditor cannot get any judgment at all (Nat. Tradesmen's Bank v. Wetmore, 124 N. Y. 241, 26 N. E. 548). This condition upon the suit we regard as part of the procedure in equity, in respect of which we are not bound by the state practice. While it is true that normally the rule applies equally in a federal court (Morrow, etc., Co. v. New England Shoe Co., 57 F. 685, 698, 24 L. R. A. 417 [C. C. A. 7]), we think it at most no more than a requirement, familiar in the case of all concurrent equitable remedies, that the plaintiff must show that he has exhausted his legal remedies, or that he has none. Hence those decisions in the federal courts holding that nonresidence will excuse the condition. Williams v. Adler, etc., Co., 227 F. 374 (C. C. A. 8); Bank of Commerce v. McArthur, 256 F. 84 (C. C. A. 5); Allan v. Moline Plow Co., 14 F.(2d) 912 (C. C. A. 8).

[7] In the case at bar the supplemental bill alleged that the Practical Company had been left an "empty shell." This was not proved, because, for all that appeared, it had accounts receivable which made it solvent. On the other hand, all property leviable by execution had been conveyed, for in New York choses in action can still be reached only by bill in equity ("supplementary proceedings"). McNeeley v. Welz, 166 N. Y. 124, 59 N. E. 697. It appears to us unnecessary to go to the extreme of the New York decisions, and say that execution and a return nulla bona are conditions, when it appears that all the debtor's property which could be reached by the writ had already been conveyed. U. S. v. Fairall (D. C.) 16 F.(2d) 328; Bird v. Murphy, 72 Cal. App. 39, 236 P. 154; O'Brien v. Stambach, 101 Iowa, 40, 69 N. W. 1133, 63 Am. St. Rep. 368; Balsley v. Union Cypress Co. (Fla.) 110 So. 263; Rice v. McJohn, 244 Ill. 264, 91 N. E. 448. Being free to decide in accordance with what seem to us the general equitable principles controlling, we cannot see why we should insist upon what would have been an idle gesture.

[8] Nor was it important that the accounts receivable might have been large enough to make the Practical Company solvent. An intent to delay and hinder creditors is as much within the statute as an intent to defraud them, and, if it exist, it is of no moment that the grantor be solvent. Teague v. Bass, 131 Ala. 422, 31 So. 4; Montgomery-Moore Mfg. Co. v. Leith, 162 Ala. 246, 50 So. 210; Hager v. Shindler, 29 Cal. 47; Martin v. Maggard, 206 Ky. 558, 267 S. W. 1102; Security State Bank v. McIntyre, 71 Mont. 186, 228 P. 618; Snyder v. Dangler, 44 Neb. 600, 63 N. W. 20; Hudson v. Jordan, 108 N. C. 10, 12 S. E. 1029; Schmick v. Noel, 2 Tex. Civ. App. 90, 20 S. W. 1135. The case at bar is a good instance of the evil sought to be reached by the statute. The Practical Company, in collusion with the Perfect, had stripped itself of all property which the plaintiff could follow, save by bill in equity. By so doing it effectively delayed and hindered the plaintiff in the collection of its claim out of the abundant chattels exposed to execution before the conveyance. This was the obvious purpose and result of the contrivance, which it was the design of the statute to defeat.

[9-11] Finally, as to consideration, it is

enough to say that no consideration will support a conveyance known to the grantee to be fraudulent. It is, however, apparently the rule in New York (Frank v. Von Bayer, 236 N. Y. 473, 141 N. E. 920) that an actual payment, made even by a fraudulent grantee to a creditor of the grantor, will be credited in his account. Whatever may be the general rule (Manufacturers' Bank v. Simon Mfg. Co., 233 Mass. 85, 123 N. E. 340), we are bound by this doctrine, because it construes a substantive provision of a local statute. To the extent, therefore, of any payment before the supplemental bill was filed (Miller v. Sherry, 2 Wall. 237, 249, 17 L. Ed. 827), we may, for argument, assume that the Perfect Company might credit itself with payments made to other creditors of the Practical Company. That rule has never extended beyond actual payments, so far as we can find. A fraudulent grantor cannot create priorities between his creditors by exacting from the fraudulent grantee a promise to pay some of them. Admitting that payments when made may prevail, promises give no liens. Nobody pretends that the Perfect Company proved that it had actually paid all those creditors whom it promised to pay as a consideration for the transfer. Allowing it credit for $10,000 alleged to have been paid to Zuckerman, the only one as to whom there is even plausible proof, there still remained an ample equity in the assets conveyed to cover the plaintiff's claim.

Finding no error, except the purely formal one that the bill did not allege that it was filed on the same day as the decree against the Practical Company, the decree appealed from is affirmed.